People v Pulsifer (2022 NY Slip Op 06300)

People v Pulsifer

2022 NY Slip Op 06300

Decided on November 10, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 10, 2022

531289
[*1]The People of the State of New York, Respondent,
v
Timothy Pulsifer, Appellant.

Calendar Date:October 14, 2022

Before:Garry, P.J., Egan Jr., Clark, Ceresia and Fisher, JJ.

Tina K. Sodhi, Alternate Public Defender, Albany (Steven M. Sharp of counsel), for appellant.
P. David Soares, District Attorney, Albany (Erin N. LaValley of counsel), for respondent.

Egan Jr., J.
Appeal from an order of the County Court of Albany County (William A. Carter, J.), entered December 6, 2019, which classified defendant as a risk level two sex offender pursuant to the Sex Offender Registration Act.
In 2010, defendant pleaded guilty in federal court to transportation of visual depictions of minors engaged in sexually explicit conduct in interstate/foreign commerce (18 USC § 2252 [a] [1]; [b] [1]) and distribution of visual depictions of minors engaged in sexually explicit conduct (18 USC § 2252 [a] [2]; [b] [1]), and was sentenced to 121 months in prison and lifetime supervised release (see United States v Pulsifer, 469 Fed Appx 41 [2d Cir 2012]). The convictions stem from defendant's online conduct in viewing, storing and sharing videos and over 600 images depicting prepubescent children, some toddlers, being subjected to sexual activity, and his actions in engaging in sexual activity with minors using a webcam. The convictions required defendant to register as a sex offender in New York (see Correction Law § 168-a [2] [d]). In anticipation of his release from prison in 2019, the Board of Examiners of Sex Offenders prepared a risk assessment instrument in accordance with the Sex Offender Registration Act (see Correction Law art 6-C) that presumptively classified him as a risk level one sex offender with a total score of 35 points, assessing points for the age of the victims, under 11 years old (30 points), and prior criminal history (5 points). The Board recommended an upward departure to a risk level two based upon a number of aggravating factors. The People, in turn, prepared a risk assessment instrument assigning a total of 85 points, agreeing with the Board's assessment of points for the age of victims (30 points) and prior crimes (5 points) and adding points for the number of victims (30 points) and stranger relationships with the victims (20 Points), thus presumptively placing defendant in the risk level two classification.
Defendant disagreed with the People's scoring, arguing that he should be scored at a risk level one or, in the alternative, that a downward departure was warranted. Following a hearing, County Court agreed with the People's assessment of 85 points, placing him at a presumptive risk level two classification, and declined his request for a downward departure. Defendant appeals.
To the extent that defendant suggests that his lack of direct physical contact with the victims of the child pornography resulted in an overassessment of points under risk factors 3 (number of victims) and 7 (stranger relationship), the assessment of points under these risk factors has been upheld where, as here, the record supports the assessments in a manner consistent with the statutory scheme and guidelines (see People v Scrom, 205 AD3d 1238, 1239-1240 [3d Dept 2022], lv denied 38 NY3d 914 [2022]; see also People v Gillotti, 23 NY3d 841, 845, 854-860 [2014]; Sex Offender Registration Act: Risk Assessment Guidelines and Commentary [*2]at 10, 12 [2006]). To that end, "[t]he whole point of the child pornography statutes is to protect children like these from exploitation by pornographers — an exploitation to which defendant, by consuming [and distributing] the pornographers' product, contributed" (People v Johnson, 11 NY3d 416, 420 [2008]). The proof in this case fully supports County Court's assessment of points under each of these risk factors.
Defendant further contends that County Court erred in denying his request for a downward departure, which was premised upon evidence that he had completed a victim impact program and thereby gained insight into the severity of the harm caused by his behavior and empathy for his victims, decreasing his risk of reoffending. In order to obtain a downward departure, "defendant was required to demonstrate, by a preponderance of the evidence, the existence of mitigating factors not adequately taken into consideration by the risk assessment guidelines" (People v Guilianelle, 206 AD3d 1311, 1312 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see People v Gillotti, 23 NY3d at 861-863). As the court noted, the evidence submitted in mitigation constituted proof of defendant's acceptance of responsibility, a factor he was given credit for and that was adequately taken into account in the risk assessment instrument in that no points were assessed under risk factor 12 (see People v Lane, 201 AD3d 1266, 1267 [3d Dept 2022]). Moreover, the aggravating factors cited by the Board in its case summary, on which the court relied, include his conduct in participating remotely in sexual activity via webcam with five minors as young as 13 years old. The Board further cited his addictive behavior in viewing pornography seven or eight hours per day, including child pornography which he had been viewing on a daily basis for four years. Given the foregoing, our review of the record supports the court's conclusion that defendant did not demonstrate, by a preponderance of the evidence, the existence of mitigating factors not adequately taken into consideration by the risk assessment guidelines that would warrant a downward departure (see People v Gillotti, 23 NY3d at 861). Defendant's remaining claims similarly lack merit.
Garry, P.J., Clark, Ceresia and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.